Good morning, Your Honors, and may it please the Court, Jessica Ellsworth for Coinbase, and I'd like to reserve five minutes for rebuttal. The District Court in this case erred in going beyond the Delegation Clause to address whether the arbitration provision in the Coinbase User Agreement was enforceable. That question was clearly delegated to an arbitrator. However, the Court's conclusion that it could look through the Delegation Clause to answer questions the contract assigned to the arbitrator is unprecedented. We haven't found any court, other than the decision below, that has taken a reference to an arbitration agreement as an invitation to circumvent the delegation and decide gateway arbitrability questions about the broader arbitration provision. And there's a reason for that. That approach is really flatly inconsistent with and would be a sea change, a really fundamental shift in what issues are open for judicial determination when a contract clearly and unmistakably delegates gateway arbitrability issues. This appeal is resolved through a straightforward application of the Supreme Court's decisions in Rent-A-Center and Henry Schein and this Court's decisions in the Brennan, Momat, and Mohamed cases. Rent-A-Center and Henry Schein make clear that courts may not look through a Delegation Clause or reach broader enforceability questions, even if they think there are only frivolous or baseless arguments that a claim is arbitrable. Ms. Hillsworth, let me ask you about that. Rent-A-Center obviously asks us to focus on the Delegation Clause as its own almost agreement within an agreement to arbitrate. But I don't read that case to say that we can put our blinders on and just look at that Delegation Agreement and not understand the context of the broader agreement. For example, it mentioned that if there are other general policies, I think it gave examples of fee splitting or, I forgot what the other one was, as applied to delegation, that that could raise a colorable issue of a challenge to the Delegation Agreement itself. So help me understand your argument. Are you saying that we shouldn't be able to look at other provisions within the contract in order to determine the validity of the delegation provision? Your Honor, I agree with exactly what you just said in describing the Rent-A-Center decision. The question is, before the Court, is why delegating these gateway questions would be somehow itself unconscionable? And Rent-A-Center looks at the three unconscionability arguments that the plaintiff had advanced there. One was that the arbitration provision was unilateral. One was a discovery limitation, and one was fee splitting. And what the Court said was that discovery limitation and the fee splitting, there might be an argument. The plaintiff hadn't made it there, but there might be an argument that those would somehow render the arbitration of this enforceability question unconscionable. And that's open for judicial resolution. But what the Court said about the one-sidedness of the arbitration clause, and I think this quote is very powerful, and it's at page 73 of the decision. The Court said, this one-sided coverage argument clearly does not go to the validity of the delegation provision. So what we do know from Rent-A-Center is that although other elements of the contract may shed light on how that delegated question will work in practice, what isn't open to a plaintiff to argue is that there's somehow a one-sided or other infirmity with the arbitration provision itself. But surely there can be issues with a broader arbitration agreement, or challenges at least to it on unconscionability grounds that might also apply to the unconscionability of the delegation provision. If it's one-sided in some respects, it could be one-sided in the delegation provision itself. And that seems to me what Mr. Bielski is arguing here, separate from the Rent-A-Center plaintiff that never mentioned the delegation provision, what is wrong with having overlap in challenging the delegation provision, as well as other provisions in the agreement for being unconscionable? So, Your Honor, I think it's one of the Sixth Circuit decision cases that we cited in our brief. I think it's a very clear answer to that, which is to say that a plaintiff can use the same legal construct to challenge the two separate arbitrations, the arbitration of this threshold enforceability question and then the arbitration of the merits. So certainly, unconscionability is available to Mr. Bielski or any plaintiff trying to challenge. But the actual content of that challenge has to be focused on the particular arbitration agreement at issue. So if you're challenging the delegation provision as unconscionable, it has to be something about the delegation provision. And so, for example, if we had a contract with a one-sided delegation provision, and that, you know, that might say coinbase-raised disputes are subject to an arbitrator's decision, but user-raised disputes are something that are available for judicial determination. You could imagine a situation quite different from what the actual delegation clause here says here, where there would be a one-sidedness that applies to the actual delegation provision. But, I mean, isn't that what the district court did here, in looking at the delegation provision and seeing that there was a defined term within that paragraph itself, that being arbitration agreement? He then went to look at the preceding paragraph to see what the defined term was, and that arbitration agreement term specifically references the formal complaint process, which only applies to user's complaints. So in other words, as I understand the district court's reasoning, he found, the court found that there was a one-sided delegation provision making the delegation clause unconscionable. So, Your Honor, I don't think the district court looked at any of the actual language in the delegation clause other than the defined term. And what the district court did was then use that defined term as sort of an open invitation to address for itself the very scope and interpretation questions that the delegation provision says shall be decided by an arbitrator and not by a court. And if this court looks to the way it has resolved similar questions, and the Mohammed case that I mentioned actually has a very similar delegation provision. It's quite similar to the one in this case. And the court had no problem enforcing that delegation provision because there was nothing unconscionable about it. The reference to the defined term didn't matter. And in Renta Center, the delegation provision there, too, also referred to a defined term. It spoke to this agreement with a capital A. Given the need to clearly and unmistakably delegate these gateway questions, and it is a higher burden of proof that applies when looking at whether there is a delegation, it really makes, it only makes sense that a delegation provision might refer to the what is the gateway question that is being delegated, enforceability of this arbitration agreement. And if that were an invitation to courts to really address for themselves what specifically is reserved for the arbitrator, that would truly be a real sea change in how this works. Well, I mean, does the FAA prohibit a court from looking at related contractual terms to understand the meaning of the delegation clause? Because if we're applying California law, we're instructed to look at the issues holistically to discern the meaning of these provisions and what the parties intended. So at least it seems that under California law, looking at a defined term within that delegation clause and seeing what it means isn't something that's a sea change or inappropriate. Your Honor, I think it is a sea change in this sense. The court in Rent-A-Center and in Henry Schein, the Supreme Court, was very clear that the question before courts when presented with a delegation clause is a very narrow one, and that their authority does not extend beyond that. And in Henry Schein, a number of federal circuits had crafted this frivolous exception, where if they thought the arguments that there was, in fact, an enforceable arbitration provision and it applied to this dispute, if they thought that was a frivolous argument, the court could itself decide the issues. Counsel, I guess going to Judge Sanchez's point, I mean, how can then we understand the terms of this delegation provision without looking at the arbitration? How just the words of the arbitration of the delegation provision and nothing else, is that what you're advocating? Your Honor, I think it's understanding what the process of delegating that arbitrability question would look like. So there are two cases that are cited in the briefs in which this Court and a California court of appeals found a delegation clause unconscionable. And comparing the arguments here to those two cases, I think, is quite instructive. The one from this Court is called Lim v. Teiforce, and in that case, the plaintiff argued the delegation clause was unconscionable because there was a venue provision that meant arbitrability of these gateway questions would have to take place before an arbitrator in Texas. There was a fee-shifting provision, and there was a cost-splitting provision, which meant that arbitrating these enforceability questions in Texas would have been prohibitively costly in light of the plaintiff's limited means and family obligations. And so what the Court said was that the combination of this venue provision, the cost-splitting provision, and the fee-shifting provision, as they applied to this delegation of enforceability questions, made that clause unconscionable. And those were general provisions as applied to delegation, right? That's right. They weren't specific to delegation. That's right. And I think the argument here is that it's one-sided in requiring users to have to arbitrate their disputes but not Coinbase, and as applied to delegation, that's unconscionable as well because Coinbase does not have to arbitrate any question about the arbitrability of their claims. So, Your Honor, in order to frame the question the way that you just did, you have set up the threshold issue to be one of the scope. What is the proper scope of the arbitration agreement? And I don't think there's any way under the Renta Center decision that the interpretations about the scope of the broader arbitration agreement are open for judicial resolution when you have a delegation clause. And so you were speaking about LIM, but wasn't that a scope question, too, in that case? Those general provisions applying to delegation? I don't think so, Your Honor. There wasn't a question of how to apply the language of the arbitration agreement and whether it covered this particular dispute. And here, there's no question the parties have a dispute about whether this is, in fact, a one-sided or a bilateral agreement to arbitrate. And I would note that doesn't really answer the question, what has been delegated? And in Brennan, what this Court said was that when you have an arbitration agreement and you have a delegation clause, that these are separate agreements to arbitrate different issues. Counsel, then, I mean, why can't you write a delegation agreement that has very straightforward, simple language, as this one does, but then in the arbitration agreement have one-sided agreements, have it be substantively unconscionable, have it all of these things? But just looking at the delegation agreement, it looks fine on its own. Why would, what you're saying, aren't you, is that that would be okay? What I'm saying is that that would be okay for requiring enforcement of the delegation provision alone. And then all of those arguments about unconscionability would be open for the plaintiff to make in front of the arbitrator. Arbitrators get to decide whether there is, in fact, one-sidedness, whether there is, in fact, something that renders this both procedurally and substantively unconscionable. And if there is, then the case is returned to court. That's the way the process, the sort of orderly way the process works. And I think that's why the Henry Stein decision is so important in the resolution here. Because that decision involved a situation where, perhaps like the one Your Honor's hypothetical posits, there really is a frivolous argument that this is, in fact, an enforceable arbitration agreement. But what the Supreme Court said, and it said it very clearly, was that, said very clearly, was that the district court in that case could not reach, didn't have the authority to reach beyond this limited and narrow question of the enforceability of the delegation provision. And if I could just mention the other case that found a delegation provision unconscionable, it's the Piniella case from the California Court of Appeals. And the contract in that case required the arbitrator to resolve enforceability challenges by applying Texas law on unconscionability rather than California law. And what the California Court of Appeals said was that that would have eliminated the employee's right to argue unconscionability under California law. And that in and of itself, requiring them to address enforceability without being able to have access to California unconscionability principles, was itself unconscionable. Again, just like in Lim, this was something about the process of arbitrating this threshold question of enforceability that would have made that determination of the threshold question somehow itself unconscionable. The situation before this court is very similar to what was addressed in Brennan, Momat, and Mohamed, where the court enforced a delegation provision and left all of the questions about scope, interpretation, and unconscionability to the arbitrator. We think that's exactly what this court should do here. I'm happy to answer additional questions or reserve the remainder of my time for rebuttal. Okay. You can save some time and we'll hear from, is it Mr. Chappell? Chappell. Chappell. Thank you. Thank you, your honors. May it please the court. Good morning. My name is Glenn Chappell. I represent the plaintiff, Appellee Abraham Bielski, in this matter. Your honors, in my view, this case really boils down to two core functions. The first is to interpret the plain language of the delegation clause and the arbitration agreement in section 8.3 of Coinbase's user agreement according to their plain text. The second step is then to apply neutrally applicable rules of California conscionability to that language as written. The district court got it right in both respects. In my argument today, I would like to focus really, time permitting, on four things, but I'd like to really begin and hone in on interpretation of the arbitration agreement and the delegation clause because that is so central to this case and to how the conscionability law applies here. I would then like to talk briefly about conscionability and a couple of observations there, and then raise two more points on severability and, time permitting, talk a little bit about effective vindication doctrine. But turning first to interpretation of section 8.3, your honors, I recognize that delegation is a threshold gateway issue. So in a case like this, I would normally begin with the delegation clause. But if your honors will permit, I think it makes more sense, just because of the unique structure of section 8.3, to actually start with interpretation of the arbitration provision itself because, as your honors have already observed, the delegation clause does incorporate the term, the express term, arbitration agreement. So in order to understand what the delegation clause does and how it applies to the parties and then assess it under California's conscionability law, you really have to understand what it applies to. And so I'd like to begin with the arbitration agreement, section 8.3. And starting out there, I really want to hone in on the term, the dispute, in the very first clause of section 8.3. And to give context, it says, if we cannot resolve the dispute through the formal complaint process. And then it goes on to talk about what is arbitrable. I think everything turns on the meaning of that phrase, the dispute, in section 8.3. And I think a user that was reading this user agreement in sequential order, in a natural way that a user would read it while reviewing it, they would have absolutely no doubt about what the dispute is. It's the dispute that's been talked about in the preceding sections, section 8.2, section 8.2.1, and section 8.2.2. And that is going through and talking about a dispute that has gone through the support team process, then wound its way into the formal complaint process. Well, Mr. Chappell, let me – oh, I'm sorry. You say there's absolutely no doubt about the interpretation of that, but they read it differently. And my question is, why isn't that disagreement between you and Coinbase over how to read the dispute and how it affects the meaning of the arbitration agreement, why isn't that precisely the sort of disagreement that would be resolved by the arbitrator under the delegation clause? So Your Honor, I think the delegation – it wouldn't be resolved under the delegation clause because the delegation clause is unenforceable because it's unconscionable for independent reasons. But I guess your primary submission, I thought, for why the delegation clause was unenforceable was that it's unconscionable because it's one-sided, right? That's correct, Your Honor. Okay. And what I'm getting at is even – I mean, there's a dispute as to whether the arbitration agreement itself is one-sided, but I don't understand how the delegation clause could possibly be considered one-sided. So maybe you can explain what's one-sided about the delegation clause. Absolutely, Your Honor. The delegation clause is one-sided for a little bit different reason than the arbitration agreement is one-sided. The delegation clause is one-sided because it delegates disputes only relating to interpretation or scope or all those things related to the arbitration agreement. And the arbitration agreement is – only itself applies to user-initiated disputes. Well, but that's – I mean, that's subject to some debate. I mean, so – I mean, as I understand it, your view of the arbitration agreement is, you know, the customer has to arbitrate its claims against – its claims against Coinbase, but Coinbase could still sue the customer, right, as you read the arbitration clause. Am I right about that? They could sue the customer. They wouldn't have to arbitrate it. Right, right. So suppose they sue the customer, you know, contrary to their position of what they're allowed to do, and wouldn't the customer at that point have a slam-dunk argument that they have to arbitrate, whether they are allowed to sue him or whether they have to go to arbitration? He would go to court and he would say, like, look, I think their dispute with me is subject to arbitration. They apparently don't in this hypothetical where they're suing him. We therefore have a dispute arising out of or related to the interpretation or application of the arbitration agreement, and that would fall squarely under the delegation clause. So it seems like the delegation clause is something that could be invoked by either party if there was a disagreement about how to read the arbitration agreement, couldn't it? So, Your Honor, I've got sort of a two-part answer to that question. The first part of that is I think that would not – the delegation clause would not operate in that context where Coinbase sued a user in court, and the reason why is because that And so I think that – But if the customer said, hey, you're suing me, I think you have to arbitrate, like, there would then be a dispute over the application of the arbitration agreement, right? So I disagree, Your Honor. I think that is a very literal reading of the words. It's not a natural plain meaning reading because I think it's – that ignores the context that precedes the delegation clause where it sets up – you know, we talked about it in our brief where the arbitration agreement sets up this if-then process that funnels things through the formal complaint process and then into arbitration. And so I think in context, that language would only even come into play when you have a user-initiated dispute in the first place. However, I will say, even if that interpretation is accepted, and again, we disagree with that, I think look at the practical impact of how that would play out to look at the one-sidedness of this arbitration agreement and the delegation clause. So on the one hand – on one side of the ledger, you would have a user who unmistakably has to arbitrate any threshold questions about any dispute that they initiate with Coinbase under the sun. And on the other side of the ledger, the only time something would be referred to the arbitrator on a gateway issue if Coinbase brought a suit would be if a user raised as a defense that this should be an arbitration and base that on an agreement that plainly does not apply in that circumstances. So even that would be one-sided under that reading. Well, I mean, I guess it seems like your argument amounts to – I mean, it's not literally covered by Henry Schein, but it seems in spirit contrary to Henry Schein, because what you're asking us to do is if we assume that you are right on the contested question of what the conclusions follow from that, but there's a delegation clause that says the arbitrator is supposed to resolve that contested question. Yeah, sure. I don't think that violates the spirit of any of those cases at all, and the reason why is because this is an extraordinary arrangement that Coinbase has set up here. This is not like most delegation clauses. The only reason that you have to go back in and sort of walk back through this nesting doll structure that's set up here, the delegation clause, is because the way Coinbase defines and incorporates the term arbitration agreement in the delegation clause, and I think that's different than the cases like in Renner Center and LIM and cases like that, where, yes, they do refer to the arbitration agreement, but the arbitration agreement itself actually applies expressly to all disputes arising from a certain context, like, for example, a person's employment. So this is just a very odd delegation clause in arbitration agreement that I've never seen one like it, and I don't think there's any cases like it. To follow Judge Miller's hypothetical, suppose Coinbase sues a user in court, and the user makes that very same defense, I think we need to arbitrate this. Who would make that decision in Coinbase's suit? It would seem to me to be the court itself, not an arbitrator, because I guess it just boils down to the degree to which one understands the delegation clause independently of the definitional terms, which, under your argument, seem to suggest that the only way that one gets to arbitration is through the formal complaint process, but Coinbase is exempted from that process itself. Yes, Your Honor. I think that's exactly right. And so if that's the case, then, if there's that hypothetical trial court action, the question of who decides whether Coinbase's claim should be arbitrated or not would be decided by the court or by an arbitrator in that case? I think it would be decided by the court, because you would not even get to delegation under the structure of this contract unless it was already something that had gone through the formal complaint process and a user had initiated the dispute. But that's, I mean, I think in the hypothetical, maybe we have different hypotheticals at this point, but in the original hypothetical, Coinbase is suing the user and the user is saying, this is a dispute that falls within the arbitration agreement, right? And so your answer of why the court gets to decide the arbitrability of that starts by assuming that the user's wrong, right? But the court doesn't get to make that assumption under Henry Schein, right? The arbitrator has to decide whether the user's right or wrong, doesn't he? Well, I think the court can make the threshold determination of what the delegation clause applies to to understand if the question is properly before them. Right, but the delegation clause applies to all disputes arising out of or related to the interpretation or application of the arbitration agreement, which is precisely what the hypothetical is describing. And then there's this redundant sentence, all such matters shall be decided by an arbitrator and not by a court. So you said earlier that, I think you said that the literal terms of that did encompass this dispute, but maybe it wasn't the most natural reading, and I'm not sure why it's not natural to read it according to its literal terms. Sure, I'm going to turn to that. So I think it's not natural because I think you've got to look at the context, and this is kind of why I wanted to start with the arbitration agreement itself. But you've got this funneling process, this if-then process that starts with if we cannot resolve the dispute through the formal complaint process, then the arbitration agreement is activated. And then any questions related to or arising out of that agreement are resolved by the arbitrator. So in a case in which Coinbase sued a user and you're in federal court already, because of that funneling process, even the delegation clause has already been taken off the table in that kind of suit because of the way that this structure is set up. And so I just think, you know, I think if you read that literal reading, you're divorcing it from that if-then process and that funneling process that has already happened. And I think that's an unnatural way to construe all this together and harmonize it. I have a question moving on to the second thing, or one of the second or third points, I forget which one you were going to mention, which is the unconscionability arguments. Let's assume we get through this process. Let's assume we get to those other issues. Assuming there is a lack of mutuality, how is that enough to establish that there is substantive and procedural unconscionability under the current case law? So that alone is not enough, just the one-sided nature of it. But there are other factors that apply equally to both the delegation clause and the arbitration agreement that create procedural unconscionability as well. And I think you've raised a really important consideration, Your Honor, and that is, you know, if you look at the Armendariz case, which is sort of the seminal case on conscionability law as applied to arbitration agreements in California, what that case and what this Court's decision in Picorni and many other cases have said after that is that because mutuality is the paramount consideration for substantive unconscionability. If that is created, you only need to show a very small amount of procedural unconscionability to take that across the threshold of being unenforceable in California. I understand there's a sliding scale here, but tell me what those other points are that you would contend would raise to that level according to our case law. Absolutely. So I think you can stop with one thing. I'm not going to stop there, but I'm just going to point out. I think the fact that this is an adhesion contract, a form contract, considering the way this is a non-mutual agreement, that alone is enough procedural unconscionability to make this unlawful. And the reason for that is, if you go back to Armendariz and these other cases, what those courts have really honed in on is the fact that even when it's a consumer contract, even when there are possibly market alternatives, just by nature of it being an adhesive contract, that creates at least a minimal amount of procedural unconscionability. However, I think there are also some other things that add to the procedural unconscionability. The second thing is Coinbase does have a unilateral right to modify the contract at any time. Now Coinbase cites these three cases from California, SERPA, Serapin, and Ping, that it says establish this rule that a unilateral modification right cannot create procedural unconscionability. I think that's flat wrong, because if you look at SERPA and Serapin, what both of those cases said was that a unilateral modification right does not render a contract illusory, in other words, void for lack of consideration. It did not talk about how that unilateral modification impacted the procedural unconscionability analysis. And then Ping said that unilateral modification standing alone did not render an arbitration agreement substantively unconscionable. Again, Ping did not look at how that affected the procedural unconscionability analysis. I think the correct line of cases is what this court did in Picorni, and what this court did in Merkin. And I'll admit, Merkin is an unpublished case, I'm not citing it as controlling, but I am citing it as persuasive rationale. And Picorni is controlling in a published case, and what Picorni said was the fact that the more powerful party had a unilateral right to modify the rules applying to arbitration in that agreement, that ratcheted up the procedural unconscionability. So let me ask this. You know, so let's say we agree that there's procedural unconscionability as a contract of adhesion. How substantively unconscionable is it, though? It's requiring a person to go and informally call a hotline, then file a formal complaint, have a dispute resolution process, and then go to arbitration. What in that makes it so onerous and burdensome to shock the conscience, to use one phrase? Absolutely, Your Honor. So in addition to the non-mutuality, which again I think is the most important aspect of substantive unconscionability, this pre-arbitration, pre-dispute process adds to that because it only applies to user-initiated disputes. So it's not a type of thing where it's like if you had a formal complaint process where both parties would go through something in front of a neutral person, like an arbitrator or some, you know, an independent person that's outside the company. This is controlled entirely by Coinbase itself. But that's not unusual, right? I mean, in terms of, you know, as consumers, we face that all the time, whether you're buying a car in Sanchez or in other situations. There may be an informal hotline or dispute process that has to eventually, for some cases, get elevated to arbitration. Why is that so unconscionable? It seems pretty commonplace these days. So Your Honor, I think at a very high level of generality, that's true that informal procedures are commonplace. But this kind of informal procedure is absolutely not commonplace. And what I mean by that is, first of all, you've got a support team process. There's no time limit on when that happens or how exactly that happens. Then you go into a formal complaint process that actually requires the user to fill out this complaint form and list out and, to use the words from the New Lassie case, give a free peek about their claim. Coinbase then has up to seven weeks under the formal complaint process to then process and come up with their defense. Counsel, that's not unlike many of these procedures out there in many other different contexts, is it? I think it's different, Your Honor. I think it's different, especially when you couple it with the fact that it's a one-sided arbitration agreement. Because typically, an arbitration agreement is going to apply to the claims by both sides arising from a certain thing, like employment or the purchase of a car. And so the formal complaint process would work mutually for both sides. And here, it's only one-sided, and it's totally controlled by one side. And why does the complaint process and the sort of giving them a free peek at your complaint, why does that make the delegation clause unconscionable? So I think for the delegation clause, again, I think under our reading of the delegation clause, you would only get to delegation until after you've gone through this process. Right. I mean, so that's your argument that it's one-sided. But I thought as to the sort of complaint process and having to give them a preview of your, and all that, I had understood that to be a distinct argument, and I'm wondering how that relates to the delegation clause. Yeah, I think that consideration, I will say, does play less force in the context of the delegation clause. But I think the delegation clause has different aspects, multiple aspects of procedural unconscionability as well, and substantive unconscionability. Again, the paramount consideration is mutuality. Under our reading of the delegation clause, it is non-mutual. It delegates only disputes arising to or related from an agreement that applies only to users. In addition to that, it is a contract of adhesion, just like the rest of it. It's subject to a unilateral modification right, just like the rest of the agreement. And so all those things apply with equal force to the delegation clause, just as they would the arbitration agreement. And that's just like the situation in LIM, where those different fee and cost provisions, they apply with equal force to the delegation clause as well. Yeah, but there was something very concrete about LIM. You know, if venue, you have to fly out to Texas, fee sharing, you know, and if those things specifically applied to having to arbitrate whether this should even be before the arbitrator, there was something specific to the delegation clause there. I'm not seeing as much of a tie-in to what you're claiming affects the delegation provision here. Well, I think it is specific. I think those procedural factors apply with the exact same force to the delegation clause. And then substantively speaking, you know, as I talked about, it specifically is non-mutual in the fact how the delegation clause operates and what type of disputes have to be, you know, threshold disputes have to be delegated to the arbitrator. So I think it does have those specific factors as well. And I see my time has expired, Your Honor, so I would just ask that you affirm the district court in all respects. Thank you. Mr. Chappell? I'm going to try and pack six points into this four-and-a-half minutes. I want to start with the fact that I heard my friend on the other side say, this is not like most delegation clauses. That's wrong. This is exactly like most delegation clauses that this court has enforced. It says that it applies to all disputes about arbitrability. And I think this goes to the question you raised, Judge Sanchez, when you were asking if there was some universe in which Coinbase might sue in court and somehow there would be an arbitrability question that's teed up for a court. We think the answer is no to that. I mean, I would note Coinbase has always understood everything about this contract to be bilateral  It has never sued in court. It has, in fact, initiated arbitrations against users, and it understands that to be the correct process. But if we assume that there is a case that ends up in court, there is no arbitrability dispute that is properly before a judge under this delegation clause. What the district court thought was that somehow this was different from a generic delegation clause. And you can see that at page ER10 and ER11. And what the court said made it different was that it incorporated a defined term, and that defined term specified the matters that were delegated to the arbitrator. Virtually every delegation clause includes a defined term. If you look at the Chamber brief on page 14, the Chamber amicus brief, the JAMS model itself, which is quoted on that page, uses a defined term. There is nothing unusual about using a defined term. And the second error the district court made... Can I just pause you for a minute? I think the distinction here, arguably, is that the defined term expressly incorporates a formal complaint process that I haven't heard Coinbase say applies to Coinbase itself. That's the distinction. Not in the abstract, the defined term, but that this defined term incorporates a process that seems unilateral and not bilateral. So Your Honor's question, I think, is consistent with what the district court said at page ER11, where it said the defined term somehow specifies the matters that are delegated to the arbitrator. And frankly, that's just not what the delegation clause says. It says, and it uses the word all, that all disputes about the interpretation and scope of the arbitrability agreement are delegated. Coinbase, to the extent you didn't hear it in the first part of the argument, Judge Sanchez, I do want to be very clear that Coinbase's understanding is that all arbitrability questions are delegated to the arbitrator under this delegation clause. The district court also said that reasonable minds could differ about his interpretation of the scope questions that he was making. He said that in denying a stay. The district court said that in denying a stay. So this is not even like the Henry Schein case, where the district court thought it was a frivolous argument for arbitration. And in Henry Schein, what the Supreme Court pointed out was that an arbitrator might hold a different view about arbitrability than a court does. So even if the court thinks the answer is obvious, it's not unheard of for a fair-minded adjudicator to think a decision is obvious in one direction and another fair-minded adjudicator to decide the matter the other way. The fact of the matter is that this is reserved for the arbitrator to decide under the language of the delegation clause. The reason the plaintiff is pushing this court so hard to start with the scope of the arbitration agreement is really because Mr. Bielski's arguments depend on conflating these two separate agreements. They depend on this court reaching the scope question in order to determine who should decide the scope question. But that is inconsistent with what all of the case law from this court and from the Supreme Court says is the proper methodology. An adhesion contract is not enough in answer to your question, Judge Mendoza. You can see that in the Fisher v. MoneyGram case and the George v. eBay case. And the George v. eBay case, I think, is particularly instructive because it addressed the eBay user agreement. And so eBay is obviously providing a service much like Coinbase, where it has users who want to use its platform to do certain things. And the courts in those cases have noted that especially in the consumer context, where there isn't economic pressure in the same way there might be in an employment context or in a health care context, an adhesion contract alone is not enough to find procedural unconscionability, which is what the district court found here. My time is up. If I may have just 30 seconds to make one last point. Very briefly. That the unilateral modification clause in this case does not change the analysis in any way. This court said in the Tompkins case in 2016 and the Poublon case in 2017 that that argument doesn't work because under California law, a unilateral modification clause is limited by the implied covenant of good faith and fair dealing. So that argument doesn't get Mr. Bielski anywhere either. For all of these reasons, this court should reverse the decision below and direct that this matter be sent to arbitration for the arbitrator to decide these threshold arbitrability issues. Thank you, Ms. Ellsworth. We thank both counsel for their helpful arguments. Submission will be deferred pending the decision from the Supreme Court.
judges: MILLER, SANCHEZ, UNKNOWN